IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANGELA WORKMAN,<br>individually and as personal representative of<br>the Estate of Paul Workman,<br><br>               Plaintiff,<br><br>     v.<br><br>CHRISTOPHER KRETZER and<br>MARTEN TRANSPORT, LTD.,<br><br>             Defendants. | Case No. 20-2605-JWL |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on separate motions by defendants Christopher Kretzer (Doc. # 61) and Marten Transport, Ltd. ("Marten") (Doc. # 65) for summary judgment on plaintiff's claims for pre-collision fright and terror, pre-death emotional distress, and pre-death pain and suffering. Plaintiff concedes that she may not recover such damages in this case and does not oppose summary judgment on those claims. Accordingly, the Court **grants** those motions and awards defendants summary judgment on plaintiff's survival action claims.

This matter also comes before the Court on defendant Marten's motion for summary judgment on plaintiff's direct negligence claims against it in her wrongful death action (Doc. # 67). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted with respect to plaintiff's claims against Marten for negligent

hiring, negligent retention, and negligent supervision, and Marten is awarded judgment on those claims. The motion is denied with respect to plaintiff's claim against Marten for negligent training.

## I.    Background

This case arises from a motor vehicle accident on July 14, 2020, in Montgomery County, Kansas, in which a van driven by decedent Paul Workman collided with a tractor-trailer driven by defendant Christopher Kretzer. At the time of the accident, Mr. Kretzer was operating his truck in the course of his employment by defendant Marten. Plaintiff alleges that at the time of the accident, Mr. Kretzer was attempting to reverse direction on the highway by executing a three-point turnaround, and that decedent's vehicle struck the truck while the truck occupied the lane for oncoming traffic.

In this action, plaintiff Angela Workman, daughter of decedent, has asserted survival claims as the personal representative of decedent's estate, and she has asserted wrongful death claims as decedent's surviving heir. Plaintiff asserts a claim of negligence against Mr. Kretzer and a claim against Marten, Mr. Kretzer's employer, for vicarious liability for Mr. Kretzer's negligence. Plaintiff also asserts claims against Marten directly for negligent hiring, retention, training, and supervision.

## II.    Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of

law." Fed. R. Civ. P. 56(a).  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *See Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006).  An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way."  *See Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).  A fact is "material" when "it is essential to the proper disposition of the claim."  *See id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *See id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof."  *See Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005).  To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein."  *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and

inexpensive determination of every action." *See Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.   **Analysis – Direct Negligence Claims Against Marten**

#### A.   *Requirement of Expert Testimony*

Marten first argues that it is entitled to summary judgment on plaintiff's direct negligence claims against it – for negligent hiring, retention, supervision, and training – because expert testimony is required concerning the relevant standard of care and its breach and plaintiff has not designated any such expert witness.  Marten argues that such testimony is required because matters relating to the heavily-regulated commercial trucking industry fall outside the common experience of lay jurors.

Marten has not provided authority, however, that such testimony is necessarily required under Kansas law[1] outside of the context of a professional liability claim such as medical or legal malpractice.[2]  Nor has Marten addressed this Court's opinion in *In re*

---

[1] Because the accident occurred in Kansas, the Court agrees with the parties that plaintiff's negligence claims are governed by the substantive law of Kansas.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (court applies the forum state's choice-of-law rules to determine which state's substantive law governs a claim); *Ling v. Jan's Liquors*, 237 Kan. 629, 634-35 (1985) (under Kansas law, tort actions are governed by the law of the state in which the tort occurred).

[2] In its briefs, Marten has relied on cases (including two non-precedential unpublished opinions by the Tenth Circuit) decided under the law of other states.  *See Alabassi v. T.I.B. Ins. Brokers, Inc.*, 825 F. App'x 593, 597 (10th Cir. 2020) (unpub. op.) (applying Colorado law); *Mooring Capital Fund, LLC v. Knight*, 388 F. App'x 814, 819 (10th Cir. 2010) (unpub. op.) (applying Oklahoma law); *State Farm Fire and Cas. Co. v. PacifiCorp*, 2015 WL 4249901, at *4 (D. Utah July 13, 2015) (applying Utah law).  Marten also cited an unpublished case from the Kansas Court of Appeals in its reply brief, but there Continued…

*Syngenta AG MIR 162 Corn Litigation*, 249 F. Supp. 3d 1224 (D. Kan. 2017) (Lungstrum, J.), in which the Court rejected a similar argument and concluded that Kansas law does not always require expert testimony in a case that does not involve professional liability.  *See id.* at 1234 (citing *Moore v. Associated Material and Supply Co., Inc.*, 263 Kan. 226, 234-35 (1997)).

Marten does attempt to distinguish *Moore* (the case on which this Court relied) as a case involving expert evidence of causation (as opposed to the elements of standard of care and breach), and it points to the *Moore* court's statement that prior cases stood for the proposition "that when plaintiffs are attempting to establish negligence based upon a departure from the reasonable standard of care in a particular profession, expert testimony is required to establish such a departure."  *See Moore*, 263 Kan. at 234-35.  Martin insists that this case involves a claim of negligence in a particular profession (commercial trucking).  The prior cases discussed in *Moore*, however, involved technical standards involved in professional negligence claims (architectural and medical), and the *Moore* court noted that "[h]oldings of an expert testimony requirement outside the area of professional liability, where breach of a standard of care must be proven, are not easily found."  *See id.*  Thus, in the absence of Kansas authority requiring expert testimony outside the context of a professional negligence claim, the Court declines to impose such a requirement here.  Marten argues that the trucking industry is heavily regulated, but the present case involves claims against Marten that are fairly limited to the issue of whether

---

the court applied the rule requiring expert testimony in a medical malpractice case.  *See Stewart v. Hutchinson Hosp. Corp.*, 2004 WL 48182, at *3 (Kan. Ct. App. Jan. 9, 2004).

Marten sufficiently trained Mr. Kretzer concerning its policy prohibiting u-turns (as discussed below), and Marten has not cited any regulations applicable to that particular training. Given the limited nature of plaintiff's direct negligence claims against Marten, the Court is not persuaded that a lay juror cannot comprehend the applicable standard of care in this case. Accordingly, the Court concludes that expert testimony is not required with respect to those claims, and therefore it rejects Marten's argument that plaintiff's direct negligence claims must fail for lack of an expert witness.

B.    *Negligent Hiring*

The parties have addressed each direct negligence claim against Marten separately, and the Court therefore does the same. In her response, plaintiff concedes that she cannot produce sufficient evidence to support a claim against Marten for negligent hiring, and she therefore does not oppose summary judgment on that claim. Accordingly, the Court grants the motion with respect the claim of negligent hiring.

C.    *Negligent Retention*

Plaintiff does oppose summary judgment on her claim of negligent retention. The parties agree that "[n]egligent hiring and retention derive from the same sort of employer conduct: either hiring an individual knowing he or she has characteristics that present an undue risk of harm to others given the nature of the job duties or retaining such an individual after learning of such characteristics." *See Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 282-83 (2011) (citations and internal quotations omitted). In attempting to meet this standard, plaintiff cites only evidence of violations by Mr. Krezter concerning the logging of driving hours and Marten's retention of Mr. Kretzer despite those

6

violations.  Under Kansas law, however, an employer is liable only for harm caused by the characteristics of the employee that the employer had reason to believe would be likely to cause harm.  *See Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 362 (1991).  In this case, plaintiff has not cited any evidence – and does not argue – that the accident related in any way to a logging violation or the hours that Mr. Kretzer had driven in that period.  Plaintiff alleges that Mr. Kretzer acted negligently in trying to turn around on the highway, but it has not cited any evidence that Marten retained Mr. Kretzer despite knowledge that Mr. Kretzer had a propensity for making such decisions or otherwise driving improperly.   Accordingly, plaintiff's evidence does not support a claim for negligent retention, and the Court grants Marten's motion for summary judgment on that claim.

> D.    *Negligent Supervision*

Plaintiff's claim for negligent supervision similarly fails.  "Negligent supervision entails either inadequate oversight and review of an employee in the performance of his or her job duties or failing to control an employee with propensities that might pose a danger." *See Belden*, 46 Kan. App. 2d at 283.  In support of this claim, plaintiff again cites Mr. Kretzer's logging violations, but again such evidence is insufficient because such violations cannot be tied to the subject accident.  Plaintiff has not provided evidence that Marten was aware of any dangerous propensities of Mr. Kretzer relating to his actual driving.

Plaintiff also argues that on the day of the accident Marten failed to supervise Mr. Kretzer adequately by failing to monitor Mr. Kretzer in real time through his GPS and

navigational systems to prevent him from attempting the turnaround on the highway. Plaintiff's claim must be supported by more than such speculation, however, and plaintiff has not provided any evidence that such real-time monitoring was feasible and could have prevented the accident. Accordingly, the Court grants the motion with respect to the claim of negligent supervision.

E.   *Negligent Training*

"A claim based on negligent training depends upon establishing facts showing that more or better training would have prevented the harm." *See id.*  In seeking summary judgment, Marten relies on its evidence that it did provide training to Mr. Kretzer; that such training addressed its policy that drivers should not attempt u-turns if they travel in the wrong direction on a highway, but that they should follow their GPS systems to reroute onto the highway in the opposite direction; and that on the day of the accident, its dispatch to Mr. Kretzer included an instruction that if he took a wrong turn he should allow the navigation system to reroute him safely. In response, plaintiff cites Mr. Kretzer's deposition testimony that at the time of the accident he "chose the best option at the time" for reversing his direction on the highway, and that he thought it was the best way "[b]ecause of [his] training." In reply, Marten notes that Mr. Kretzer later testified that he believed he was doing the safest and best thing to turn around based on his "personal driving experience." That response, however, does not necessarily contradict his earlier testimony, viewed in the light most favorable to plaintiff, as both his experience and his training could have informed his decision. Marten also argues that Mr. Kretzer did not specify that he was referring to his training *by Marten*. Again, however, the evidence must

be viewed in the light most favorable to plaintiff, and a reasonable jury could conclude that the "training" cited by Mr. Kretzer included his most recent training with his employer at the time. Accordingly, the Court cannot conclude as a matter of law that no reasonable jury could find for plaintiff on this claim based on the evidence submitted, and the Court therefore denies the motion with respect to plaintiff's negligent training claim.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motions for summary judgment on plaintiff's claims for pre-collision fright and terror, pre-death emotional distress, and pre-death pain and suffering (Doc. ## 61, 65) are hereby **granted**, and defendants are awarded judgment on plaintiff's survival action claims.

IT IS FURTHER ORDERED BY THE COURT THAT defendant Marten's motion for summary judgment on plaintiff's direct negligence claims (Doc. # 67) is hereby **granted in part and denied in part**. The motion is granted with respect to plaintiff's claims for negligent hiring, negligent retention, and negligent supervision, and Marten is awarded judgment on those claims. The motion is denied with respect to plaintiff's claim for negligent training.

IT IS SO ORDERED.

Dated this 21st day of December, 2021, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge

9